THE MUSCATINE WESTERN R. R. Co. v. HORTON ET AL.

1. **Taxation**: CONTRACT: CONDITION PRECEDENT: RAILROAD. An agreement under which a tax was voted to aid in the construction of a railroad stipulated that it should be built and in operation on or before a certain day: *Held*, that if the road was in a condition to be operated at that time, although not completed, this was a sufficient compliance with the contract.

2. ———: ———: RAILROAD: SALE. The sale of the road, before its completion, by the corporation in whose favor the tax was voted, with the reservation that the vendor shall complete the road-bed and collect the tax, will not defeat its right to the tax after the road is completed.

3. ———: SALE: CORPORATION: DISSOLUTION. Although such sale might amount to a voluntary dissolution of the corporation, yet it would survive to the extent that its rights and obligations growing out of the voting of the tax could be enforced.

4. ———: CONTRACT: EVIDENCE. No contracts or agreements, save such as are in writing, can be set up to defeat the collection of the tax.

5. ———: ———: ———. *Semble* that representations and oral agreements might be admissible for the purpose of establishing fraud.

6. ———: OFFICERS: JUDICIAL ACTS. A judicial officer, acting without corrupt or malicious motives, is not liable in damages for an erroneous interpretation or application of the law, and this exemption embraces his acts in a *quasi* judicial capacity.

7. ———: ———: DUTY OF TRUSTEES. The act of township trustees in
issuing to the railroad company a certificate of compliance with the con-
ditions upon which the tax was voted is judicial, and they are not liable
in damages for a refusal to issue it, unless they act willfully or corruptly.
MILLER, J., *dissenting*.

### Appeal from Louisa District Court.

WEDNESDAY, DECEMBER 17.

THIS is a mandamus proceeding to compel the defendants,
who are trustees of Pike township, Muscatine county, to issue
a proper writing, as required by law, certifying that plaintiff
has complied with and performed the conditions upon which
a tax was voted by the electors of the township to aid in the
construction of a railroad. The petition sets out the fact that
a tax was duly voted on the 4th day of May, 1871, and the
conditions upon which its collection was made to depend under
the terms of the petition for and notice of the election required
by law, and an agreement in writing between plaintiff and the
trustees of the township, and avers full compliance therewith.
It also shows that the proof required by law to be made to
defendants, of compliance on the part of plaintiff with such
conditions, has been rendered to them, and a demand made
upon them for their certificate to the treasurer of the county
setting out the fact of plaintiff's performance of its contract
expressed in the writings just mentioned, and that the same
has been refused wrongfully, unlawfully, and willfully, and that
the tax payers of the township have agreed with defendants
to hold them harmless if they will withhold the certificate. It
is alleged that plaintiff has sustained damage by reason of
defendants' refusal to issue the certificate. A writ of manda-
mus is prayed for, commanding defendants to issue the certifi-
cate, and a judgment against them for damages and costs is
also asked.

The answer of defendants admits the vote to aid in the con-
struction of the railroad, but denies that the conditions upon
which it was voted are fully stated in the petition, and
expressly denies that the true conditions have been performed
by plaintiff, especially the completion and operation of the

railroad to the point and within the time fixed by the contract and stipulation of the parties, and that the proof given them by plaintiff shows the facts stated in the petition.   Other allegations of the petition are not expressly admitted or denied.   It is averred that plaintiff cannot perform its covenants and obligations assumed in accepting the tax voted for the reason that it had sold and conveyed all its property, rights, and franchises, except taxes voted, to the Burlington, Cedar Rapids and Minnesota Railroad Company before any part of the railroad was completed or in operation, and that the railroad has become a branch or part of the road owned by the last named corporation, whereby the people of the township are deprived of the advantages and profits of a through competing line of railroad, which was their object and purpose in voting the tax. It is alleged that plaintiff, by the sale of its road, with all its rights and franchises except the taxes voted, by the unanimous consent of its stockholders, is dissolved, and cannot therefore, enforce the collection of the tax in question.   The defendants aver that, on account of the facts alleged in their answer which are known to them, they refused to execute the certificate demanded by the plaintiff.

An amended answer alleges that the petition, vote of the tax, and all agreements in the premises were obtained by plaintiff through fraud, in this, that plaintiff represented that it had perfected arrangements with another corporation to build a bridge across the Mississippi river at Muscatine, and to construct a railroad therefrom to connect with the Rockford, Rock Island and St. Louis Railroad, so that the people of Pike township would have direct connection by such roads with the cities of Chicago and St. Louis by a line of road which would compete with the Burlington, Cedar Rapids and Minnesota Railroad, and that plaintiff had secured the means to build and construct a first class road; all of which representations were false, and so known to plaintiff, but were not discovered by the tax payers and defendants till after the sale of plaintiff's road.

The cause was commenced in Muscatine county, and by the consent of parties transferred to the District Court of Louisa

county, where it was tried at the March term, 1873, and a judgment rendered for plaintiff, awarding the mandamus prayed for in the petition, and damages in the sum of $495.50, for which an execution was ordered to issue against the defendants. From this judgment defendants appeal. The other facts of the case, so far as they are involved in the points ruled in the opinion, are found therein.

*Clark & Haddock* and *Hanna & Fitzgerald,* for appellants.

*Richman & Carskadden, Cloud & Broomhall* and *Cook, Richman & Bruning,* for appellees.

BECK, CH. J.—The facts of the case as developed by the evidence before us are not numerous, and involve little, if any, conflict of evidence. They are as follows:

The Muscatine Western Railroad Company was incorporated May 23, 1870, for the purpose, as shown by its charter, of constructing a railroad from Muscatine to the west line of the State. Its principal place of business was fixed at Muscatine, and it is empowered by its articles of incorporation at any time "to consolidate with, or lease its road to, any corporation within or without the State, in any manner or form not inconsistent with the laws of the State of Iowa." The company entered into a contract with another corporation, the Iowa Construction Company, for the building of its road from Muscatine to the Missouri river, to be completed as far as Pella, by September 1st, 1873. The construction company were to pay all expenses of right of way, etc., and receive all money derived from taxes voted in aid of the road, and all donations and subscriptions, amounting to not less than $3,500 per mile, and to receive stock of the corporation to the amount of $20,000 per mile, which, as we understand the record, was to be converted into mortgage bonds of the company of a like amount.

An agreement executed between the plaintiff and the trustees of Pike township, in contemplation of the tax to be voted by the electors, the petition upon which such vote was ordered,

and the notice of election were introduced in evidence. As the contract of plaintiff is expressed in these documents, and its true force and effect are discovered by their construction, it is important that the instruments be considered together, and the whole of each one read. For this reason we set them out in full. They are as follows:

### AGREEMENT.

"This agreement, made this 4th day of April, A. D., 1871, by the Muscatine Western Railroad Company, (by L. H. Washburn, a Director and Secretary of said Company, duly authorized to execute this article of agreement,) with the Township Trustees of Pike township, Muscatine county, Iowa, in their official capacity, as follows: *Whereas*, the people of said township are about to call a special election of the voters of said township, through the Township Trustees, for the purpose of submitting to the qualified voters of said township the question of voting a four and one-half per cent. tax upon the taxable property of the people of said township, upon the terms and special conditions, that the proceeds of said tax, if voted, shall not be paid over to said railroad company until their railroad shall have been built and in operation, from the city of Muscatine, Iowa, to the crossing of the Burlington, Cedar Rapids and Minnesota Railroad, at Nichols Station, in said township; and further, that said railroad shall be so built, on or before the first day of July, 1872.

"Now this agreement witnesseth: that said Railroad Company doth hereby agree, that in case said tax is carried at said election to be called, they will not demand or receive the same until they have fully complied with all of the terms and conditions, as set forth in the petition and notice of election, under which such tax may be voted, and that they will fully comply with the terms of said election in all particulars."

### PETITION.

"To the Township Trustees of the Township of Pike, in the County of Muscatine, State of Iowa:

"The undersigned, petitioners, representing more than one-

third of the resident tax payers of Pike Township, in the
county of Muscatine, State of Iowa, respectfully ask that you
will cause to be submitted to the legal voters of the said town-
ship, the question of voting a tax of *four and a half per cent-
um*, on the taxable property of said township, for the purpose
of aiding in the construction of the Muscatine Western Rail-
road, which is to start from the city of Muscatine, county of
Muscatine, State of Iowa, and run in a westerly direction
through portions of the counties of Muscatine, Johnson, Wash-
ington, Keokuk, Mahaska and Marion, to some point on the
Missouri, in the State of Iowa, as provided by an act entitled,
"An act to enable townships, incorporated towns and cities to
aid in the construction of railroads." Said tax, when collected,
to be expended pursuant to said law, in the township of Pike,
in said county of Muscatine, State of Iowa.   And it is further
expressly provided, that the aid voted for is on the express con-
dition that no part of the money shall be drawn from the
treasury by said railroad company, until said railroad shall be
built, and in operation, from the city of Muscatine to the cross-
ing of the Burlington, Cedar Rapids and Minnesota Railroad,
at Nichols Station, in said Pike township, and also on the fur-
ther express condition that said railroad shall be thus built and
in operation by July 1st, 1872."

### NOTICE OF ELECTION.

" We, the undersigned, Trustees of the township of Pike, in
the county of Muscatine, and State of Iowa, having been peti-
tioned to do so by more than one-third of the resident tax-pay-
ers of said township, do in pursuance thereof, and of an Act of
the General Assembly of the State of Iowa, entitled "An act to
enable townships, incorporated towns and cities, to aid in the
construction of railroads," approved April 12th, 1870, herein
give notice to the legal voters of said township, that there will
be a special election held at the school house in Sub-District
No. 3, known as Lacy school house, in said Pike township, in the
county of Muscatine and State of Iowa, on the 4th day of May,
A. D., 1871. Polls to be opened at 9 o'clock, A. M., and remain
open until 6 o'clock, P. M., of the same day, for the purpose of

submitting to the legal voters of said township, the question as to whether said township shall aid in the construction of a railroad from the city of Muscatine, in the county of Muscatine, in said State, to the Missouri river, through portions of the counties of Muscatine, Johnson, Washington, Keokuk, Mahaska and Marion, (known as the Muscatine Western Railroad,) by levying a tax of four and a half per centum on the taxable property in the said township of Pike, the same to be expended in the said township of Pike, in said county of Muscatine. And it is further provided, that the aid voted for, if given, is on the express condition that no part of the money raised thereby shall be drawn from the treasury by the said Railroad Company, until said railroad shall be built and in operation, with the cars running thereon from the city of Muscatine to the crossing of the Burlington, Cedar Rapids and Minnesota Railroad at Nichols Station, in said Pike township, and also on the further express condition that said railroad shall be thus built and in operation by July 1st, 1872. The above question shall be submitted at said election in the following form:

" Taxation" or " No Taxation."

Those voting in favor of said proposition shall have written or printed on their tickets the words " For Taxation," and those voting against said proposition the words "Against Taxation."

At the election held pursuant to the order and notice of the trustees, a tax of four and a half per cent was voted, which, upon the whole property of the township, amounts to $15,-217.00.

The construction company, under the contract with the plaintiff above stated, commenced the work of constructing the road which was in progress on the 27th day of May, 1872, when the plaintiff conveyed to the Burlington, Cedar Rapids & Minnesota Railroad Company its road so far as it was constructed and all its other property and franchises except the taxes-voted in aid of the enterprise and subscriptions made in certain townships to the stock of the corporation. The conveyance is as follows:

"Know all men by these presents, that the Muscatine Western R. R. Co., for and in consideration of the sum of one dollar, to them paid, by the Burlington, Cedar Rapids & Minnesota R. R. Co., and in consideration of the said railway company ironing, equipping and operating the said Muscatine Western R. R., from the city of Muscatine to the Iowa river in Fremont township, Johnson county, Iowa, do hereby sell and convey to the said Burlington, Cedar Rapids & Minnesota R. R. Co., *all their rights of way and other lands of said company, grading, culverts, bridges, ties and all other property, rights and franchises of said company*, except the taxes voted, and subscriptions made in Bloomfield, Pike and Fremont townships; to have and to hold the same to the said Burlington, Cedar Rapids & Minnesota R. R. Co., their successors and assigns forever."

"In witness whereof, the said Muscatine Western R. R. Co., by its President and Secretary, being thereunto duly *authorized by an unanimous vote of the stockholders of said company*, have hereunto signed their names and affixed the corporate seal of said company on the 27th day of May, 1872.

MUSCATINE WESTERN R. R. CO.,

*Revenue*        By S. G. STEIN, *President.*

*Stamp.* [SEAL.]     L. H. WASHBURN, *Secretary.*

The B., C. R. & M. R. R. Co., at the time the foregoing deed was made, entered into a contract with the M. W. R. R. Co., to iron the road between Muscatine and the Iowa river, which is west of Nichols Station, and put the same in operation by the first of July, 1872, and build the rest to some other point in 1873. On account of an evident mistake in the abstract before us, we are unable to determine the place intended to be named. This, however, is immaterial as no question arises upon this part of the contract. The M. W. R. R. Co. agreed to procure the right of way, to prepare the road bed, build bridges and culverts, and furnish the ties ready for the iron, and reserved and were to retain the taxes voted in aid of the enterprise, to pay for the work done by them. Upon the execution of the deed to the B., C. R. & M. R. R. Co., and the making of the agree-

ment, the directory of the M. W. R. R. Co. was changed by the resignation of certain persons, and election of others who were interested in the other corporation. Most of the stock of the M. W. R. R. Co. was transfered to the president of this B., C. R. & M. R. R. Co. to be held in trust for those persons who had just been chosen as new directors. At the same time the construction company entered into a contract with the B., C. R. & M. R. R. Co., to construct the road to the Iowa river by the first day of July, 1872, and seventy miles west of that river by the first day of December, 1874, and also agreed to cancel its contract with the M. W. R. R. Co., except that it reserved its right to the local aid voted and subscribed along the line between Muscatine and the Iowa river. By this contract the B., C. R. & M. R. R. Co. undertook to extend the railroad in a westerly direction at least seventy miles beyond the Iowa river, by the first of December, 1874.

On the first day of July, 1872, the B., C. R. & M. R. R. Co. executed a mortgage upon the road it had thus purchased, describing it at the Muscatine extension of its railroad, for $6,000,000 to secure bonds issued to carry on the enterprise.

Under the contracts and arrangements above set out, the said road was so far completed that cars run over it to Nichols Station, on the first day of July, and since that time it has been used for the purpose of a railroad. On the same day, or soon after, cars ran to the Iowa river. The road from Muscatine to Nichols station was not fully completed at the time named. A sufficient number of ties were not put in, and all the spikes required were not driven; the road was not ballasted and other work necessary for a completed road was not done. But, as has just been stated, it was in a condition to permit engines and cars to be run over it, and with the work above mentioned, has been rendered a fit road for the purposes it was designed. All the work of building the road to the Iowa river was done by the M. W. R. R. Co., except the laying of the iron which was done by the B., C. R. & M. R. R. Co. There remained after the completion some unsettled cases of right of way, which were conducted by the construction company in the name of the M. W. R. R. Co.

The organization of the last named corporation is still kept up, and the various offices filled . as required by its charter. Nichols Station referred to and made the point at which the road was to be constructed, at the time specified in the documents copied above, is upon the B., C. R. & M. R. R. Co. The record does not disclose the distance this station is from Muscatine. The B., C. R. & M. R. R. runs in a north and south direction; the other road east and west, and is operated by the corporation owning the first, as a branch road.

The vote of the taxes involved in this case was had under the provisions of Chap. 102, of the Acts of the 13th Genl. Ass., which authorize a. majority of the electors of a township to impose a tax upon the property therein, as a gratuity to aid in the construction of any railroad. The enactment is in the most general language, and the authority and power conferred is hedged by no restrictions except as to the amount of taxes that may be thus imposed to aid any one enterprise. Upon an affirmative vote the taxes are levied and collected as other taxes, and are to be paid out by the county treasurer, to the corporation building the road upon a certificate of the trustees of the township. Chap. 2, Acts 14th Genl. Ass., provides that the taxes shall not become due, payable or collectible, except upon compliance by the railroad company with the conditions, inducements and contracts in writing under which the taxes were voted. A certificate of the trustees, the defendants in this case, to the effect that plaintiff had performed its contract found in the agreement, petition and notice of election above set out, is the instrument which plaintiff prays in its petition the defendants may be compelled by mandamus to issue. In order to determine whether this relief may be granted, it is our duty to inquire: 1. As to the terms and conditions of plaintiff's contract. 2. Whether they have been performed.

I.   By the conditions of the contract set out in the agreement, petition and notice of election, the proceeds of the tax voted are not to be paid over, unless the railroad shall have been built and in operation from Muscatine to Nichols Station, on or before the first day of July, 1872. Defendants insist that plaintiff failed to

1. TAXATION : contract: condition precedent: railroad.

comply with this condition, as the road was not *completed* at the time specified. But the contract does not impose an obligation upon plaintiff *to complete* the road by the time named, it simply stipulates that the road shall be " built and in operation " by the time fixed. The evidence shows that, though not completed, it was in a condition to be operated, and in fact, in operation, for from that day on cars were run over the track. The stipulation does not require a completion of the road, but that it be built and in operation—so far completed that it is capable of use. The contract does not stipulate as to the character of the work, or the condition of the road on the first day of July, 1872, further than it shall be in operation. It was built so that it could be operated. In our opinion a sufficient performance of the condition is shown.

II. The evidence shows that the road was built by the construction company under a contract with plaintiff, so far as to prepare it for the iron, and was paid for out of the taxes voted in aid of the enterprise, and other assets of the corporation. So far there can be no question that the work is to be considered as having been done by plaintiff. Under the contract of sale made with the B., C. R. & M. R. R. Co., the road was ironed by the last named corporation. This work in a like manner was procured to be done by plaintiff; it was performed in pursuance of the contract with plaintiff. Does the fact that this

2. ——: ——. contract involved the sale of the road defeat the
railroad: sale. position that it was built by plaintiff? It is clearly apparent from the contract between the plaintiff and the tax payers, as contained in the documents above set out, that the sole object intended in voting the tax was to secure the building of the road. No provision is found therein forbidding an alienation at any time of the road by the company undertaking to build it. Unquestionably the plaintiff had the right under the contract, to sell the road immediately after its contract with the tax payers was performed, nor is it prohibited from contracting to sell, encumbering, or selling, before that time. We look to the contract and the statutes authorizing it in vain for such limitation of right. The tax payers have no right of property in the road; they consent that the taxes be paid as a

gratuity, to secure its construction. The ultimate ownership is left out of view; in fact the ownership at any time is not a subject contemplated by the contract, or the law authorizing it. The construction of the road is the object intended to be secured, without regard to the parties that may own it. Sec. 3, Chap. 102, Acts 13th Genl. Ass., provides that the tax shall be paid to the company " whose road such tax has been voted to aid." These are the only words either in this statute, or in the one amendatory thereto, (Chap. 2, Acts 14 Genl. Ass.,) which indicate to whom the taxes shall be paid when collected. The language of the contract, it will be observed, is not more explicit in referring to the ownership of the road. Whatever construction may be put upon the language under consideration, it cannot be claimed that it prohibits the incorporation from selling the road before it is completed, provided it be afterward completed and used as a railroad. We need not inquire which company in such a case, the one commencing or completing the work, would be entitled to the tax. In the case before us it is settled by the contract between the two railroad corporations.

III. Counsel for defendants insist that the sale of the road, with all the property, rights and franchises of plaintiff, which was done with the unanimous consent of the stockholders, 2. ——: sale: amounts to a voluntary dissolution of the corpora- corporation: dissolution. tion, and thereby its corporate existence ceased, and it no longer possesses rights and the ability to enforce them. We may admit fully the principle of law here announced as the premises of the proposition, and that the facts disclose that the plaintiff's corporate existence was intended to be terminated by its act in transferring its property, but the conclusion, as it is intended to be applied to the transactions involved in controversy, is by no means admissible. The facts are these: The M. W. R. R. Co. sold all its property, rights and franchises except the tax voted and subscription made in aid of the enterprise which, by express contract, it reserved under an agreement that these assets were to be collected and applied to the payment of another company which it had employed to build the railroad. The agreement

required that it should do certain work for the completion of the road. The act of dissolution left certain obligations upon the corporation, and certain property in its hands to be disposed of in discharging them. Its affairs were therefore not fully settled and closed up. Its chartered powers expired by voluntary act of the stockholders, and it ceased to be a corporation except so far as it was kept alive · by the law. But it was and is kept alive by statute for the purpose of discharging its contracts and disposing of its property. Rev., § 1171, is in these words: "Corporations whose charters expire by their own limitation, or by the voluntary act of the stockholders, may nevertheless continue to act for the purpose of winding up their concerns, but for no other purpose." *Muscatine Turn Verein v. Funck*, 18 Iowa, 469. Considering, therefore, the sale of the franchises of the company to the other corporation as a voluntary dissolution, (a point, however, that we do not decide,) it continues to exist to wind up its affairs, and most certainly may fully perform those things it is required to do by the act of dissolution, and which are necessary to make that act complete. This point demands no further consideration, and we find it unnecessary to follow the course of argument of counsel thereon, which displays much learning and involves the examination of many authorities.

IV. Counsel for defendants again insist that the electors of the township voted the tax in consideration that the railroad to be built was to be an independent and competing line, and an obligation was thereby imposed upon plaintiff to so maintain it, which became a part of the contract between the parties, and, as this condition has been violated, plaintiff is not entitled to the money realized from the taxation. That such was a prime inducement to the vote granting the aid, and that the people of the township have been deceived by false promises, and wronged by the violation of pledges, may be true. But we find no such a contract existed in writing between the plaintiff and the township, and, under the statutes above cited, the violation of *written* contracts is alone made the ground of defense to the payment of the taxes. The legislature did not esteem it

4. ——— : contract: effect of oral agreement.

necessary to require the railroad companies to perform their unwritten agreements. As the railroad company have performed their written contract, and their morals are up to the standard of the law, their violated verbal pledges and contracts constitute no defense to this action. For the very same reason an offer of defendant to introduce evidence of representations made by defendant of its ability to build the road, was properly refused. Upon such evidence defendants proposed to establish a contract, but as it was not shown to be in writing, it was not available as a defense. Had such evidence been offered for the purpose of establishing fraud, our conclusions might have been different as to its admissibility.

Defendants complain that when the people voted the tax, they expected a through road would be built from Muscatine to the Missouri river. But they are unfortunate in not making the building of such a road a condition, by proper writing, upon which the payment of the taxes should depend. The construction of the road farther than Nichols Station is not made such a condition and their hopes and expectations, based upon the verbal contracts of plaintiffs though they be, may be disappointed without operating to relieve them from the obligation they too readily assumed without guarding it by restrictions in the manner required by the law. It may be, too, that their just expectations are as likely to be realized in the present condition of the enterprise as to its ownership, as though the plaintiff had continued its efforts to build the road. Though the fact has nothing to do with the legal question under consideration, it may be truly said that the corporation purchasing the road is not shown 'to possess less ability to construct it or less inclination in good faith to carry out the original object of the enterprise, than the plaintiff. The tax payers, as we have seen, under the law, can compel neither corporation so to do; if done, it must be a voluntary act of the railroad company. Their condition is not made worse by the change in the ownership of the road.

V. The court rendered judgment against defendants personally for damages. In this we think there is error. It was the duty of defendants, upon proper evidence of the fact to

give their certificate that the law had been complied with and the contract of the plaintiffs had been performed. *7.——:——: duty of trustees.* They are required to be satisfied of the facts certified, and the law does not provide that any statement made to them by the officers of the railroad company shall be conclusive and upon it they are compelled to give the certificate; indeed it is not provided that such a statement shall be rendered to them at all, but to the county treasurer accompanying their certificate. Doubtless such statement might be received and acted upon by them, but if it failed to convince them, against their own personal knowledge on the subject or other evidence which they might possess, that the law had been complied with, they would surely be justified in refusing the certificate. They are required to determine a fact whereon the right of other parties may rest and thereupon to do or not to do a specified act. Their duty in this respect is of a judicial character, and for a failure to discharge it they are not liable to an action for damages, unless they act willfully or corruptly. In *Wasson v. Mitchell*, 18 Iowa, 153, this doctrine is announced and it is held that the duty of an officer to approve a bond is of a *quasi* judicial nature, which certainly is less clearly a judicial act than that which was required of defendants. See *McCord v. High*, 24 Iowa, 336, for a discussion upon the distinctions between ministerial and judicial acts.

The fact that defendants with evidence before them decided erroneously, or mistakenly interpreted and applied the law, does not render them liable. They were acting in a *quasi* judicial capacity and may not be prosecuted for errors or mistakes. The evidence fails to satisfy us that they acted willfully and there is no charge that they were guided by corrupt or malicious motives. They cannot therefore be held liable for damages to the party suffering from their erroneous acts. Had the law required of defendants absolutely a ministerial duty, and they were clothed with no right or power to adjudicate upon questions of fact or law, they could be required to respond in damages to the extent of the injury sustained by plaintiff, *Amy. v. Supervisors*, 11 Wall., 136, and a willful

neglect to perform such duty would amount to a misdemeanor. Rev., § 4301. But, as we have seen, the duty imposed on defendants involved the exercise of judgment, discretion, and rested upon the consideration of evidence—of facts known or to be made known to them and the application of the law thereto. This duty they did not neglect; they did not, or at least it is not so shown to us, willfully refuse to do their duty but rather in its performance erred, deciding wrongly upon the law. They ought not to be held liable for damages.

My views upon the constitutionality of the law authorizing taxation in aid of railroads are well understood as I have heretofore announced them at length. See my dissenting opinion in *Stewart v. Board of Supervisors*, 30 Iowa, 9. They have undergone no change, but have become strengthened. I now hold that the statutes, above referred to, are in conflict with the constitution; and I confidently expect to see the day when this court will return to the doctrines announced in *Hanson v. Vernon*, 27 Iowa, 28, holding such legislation unconstitutional. But so long as the majority of this court hold the statutes valid, they are to be enforced as law, and I must discharge my duty as a member of this court interpreting them as such.

My examination of these statutes satisfies me that they are not only in conflict with the constitution, but are vicious in their policy and details. The rights of the tax payers are imperfectly guarded, and they are easily made the victims of bad faith and unfair dealings on the part of the railroad corporations in the manner charged by defendants in this action. But the defects in the law have nothing to do with its application by the courts. The people of the township represented by defendants, having ventured to call into exercise its provisions, must be content to endure their evil effects.

The judgment of the District Court, so far as it assesses damages against defendants, is reversed; otherwise it is affirmed, and a judgment in harmony with this opinion will be rendered here, or, at plaintiff's option, the cause will be remanded to the District Court for such a judgment there.

MODIFIED AND AFFIRMED.

MILLER, J., *dissenting.*—I am unable to concur in the foregoing opinion of the majority. In my opinion the Muscatine Western Railroad Company, to whom the tax was voted to aid in the construction of its railroad failed to fulfill the conditions upon which such tax was to become payable to it, and therefore the defendants are not required to make the certificate demanded.

The plaintiff was incorporated under the laws of this state *for the purpose of constructing a railroad from Muscatine to the west line of the state,* with its principal place of business in the city of Muscatine. The organization of the company took place May 23d, 1870. In the petition presented to the township trustees, asking a submission of the question to a vote of the electors, whether a tax should be levied in aid of the construction of the plaintiff's proposed road, it is recited that the road is to "start from the city of Muscatine, county of Muscatine, State of Iowa, and run in a westerly direction through portions of the counties of Muscatine, Johnson, Washington, Keokuk, Mahaska, and Marion, to some point on the Missouri river in the State of Iowa," and it was therein further "provided that the aid voted for is on the express condition that no part of the money shall be drawn from the treasury by said railroad company, until said railroad shall be built and in operation, from the city of Muscatine to the crossing of the Burlington, Cedar Rapids & Minnesota R. R., at Nichols Station in Pike township; and also on the further express condition that said railroad shall be thus built, and in operation by July 1st, 1872."

It was also expressly agreed between the plaintiff and the trustees of Pike township that the tax about to be voted should be voted and payable "upon the terms and special conditions that the proceeds of said tax, if voted, shall not be paid over to said railroad company *until their railroad shall have been built and in operation* from the city of Muscatine, Iowa, to the crossing of the Burlington, Cedar Rapids & Minnesota R. R., at Nichols Station; and further that said railroad shall be so built on or before the first day of July, 1872." On the 27th day of May, and before the grading of the road from Muscatine to Nichols

Station was completed by the plaintiff, it made an absolute and unconditional sale and conveyance to the Burlington, Cedar Rapids & Minnesota Railroad Co. of "all it rights of way and other lands of said company, grading, culverts, bridges, ties, and all other property, *rights and franchises* of said company, except the tax voted and subscriptions made" in Pike and other townships named. On the same day the Burlington, Cedar Rapids & Minnesota Railroad Company entered into a written contract with the Iowa Railway Construction Company, by which the latter agreed to complete the grading of the road from Muscatine to the Iowa river ready for the iron by the first day of July, 1872.

It will thus be seen that before the plaintiff had performed the conditions upon which it was to become entitled to the tax voted, it sold and conveyed all of its property in the road it had undertaken to build, and all of its rights and franchises connected therewith, thereby disabling itself from performing the conditions of its contract with the defendant. In my opinion this sale operated as a dissolution of the corporation to which the aid had been voted. It was no longer a corporation for any purpose except to wind up its affairs, that is, to pay its debts and collect moneys due it. This tax had not become due and payable to the corporation when all of its property and franchises were by it transferred to another corporation, leaving it utterly powerless to go on and complete and operate its railroad to Nichols Station by the first day of July, 1872, which was the condition upon which it was to become entitled to the aid voted by the people of Pike township. Nor did the plaintiff pretend to thus complete its road to Nichols Station. On the contrary the grading was finished by the construction company under a contract with the Burlington, Cedar Rapids & Minnesota Railroad Company, and the road ironed and operated by the last named company, then the owner thereof.

From the time the plaintiff sold and conveyed its property and franchises to the Burlington, Cedar Rapids & Minnesota Railroad Company, the plaintiff as a corporation was dissolved and the road it had proposed to build and had commenced,

was no longer the Muscatine Western Railroad, but a branch of the Burlington, Cedar Rapids & Minnesota Railroad. The railroad which the people of Pike township had voted to aid was entirely abandoned. Instead of a railroad from the city of Muscatine westerly across the State it was converted into a plug or feeder to another and rival railroad, and this before any of the tax voted had become payable by the terms of the agreement entered into between the plaintiff and the trustees of the township, thus abandoning the enterprise to aid which the tax was voted.

The trustees could not truthfully and lawfully certify that the plaintiff had complied with the conditions on which the tax was voted and should not be required to do so by mandamus.

I have thus briefly stated the principal grounds of my dissent from the majority opinion which in my judgment compels the people of Pike township to pay a tax in aid of a railroad which they never agreed to or proposed to assist.