MANNING v. MATHEWS ET AL., TOWNSHIP TRUSTEES.

1. **Railroads:** TAX IN AID OF: ALIENATION OF ROAD: TAX FORFEITED: A tax voted by a township in aid of a railroad, under Chap. 123, Laws of 1876, is forfeited by the alienation of the road before its completion; and in such case the township trustees may be enjoined, at the instance of a tax-payer, from certifying to the county treasurer that the conditions of the vote have been complied with, and the treasurer may be enjoined from collecting and paying over the tax.

2. **Jurisdiction:** NOT LOST BY CHANGE OF JUDGES BETWEEN SUBMISSION AND DECISION OF CAUSE. Where a cause in the circuit court was prepared for trial on depositions, and thereupon was, upon agreement of the parties, submitted for decision and decree in vacation, but before the decision a second circuit judge was added to the district, and the county in which the cause was pending was assigned to his circuit, and the other judge, who had not decided the case, sent the cause to him, *held* that he had jurisdiction to decide it. *Hull v. Chicago, B. & P. R'y Co.*, 65 Iowa, 713, followed.

*Appeal from Jasper Circuit Court.*

WEDNESDAY, JULY 22.

ACTION in chancery to enforce the collection of a tax voted to the New Sharon, Coal Valley & Eastern Railway Company to aid in the construction of its railroad. The relief prayed for in the petition was granted by the final decree in the case. Defendants appeal.

*R. A. Sankey, C. H. Gatch* and *Smith McPherson,* for appellants.

*H. S. Winslow,* for appellee.

BECK, CH. J.—I. In 1881 the electors of Newton township, Jasper county, voted a three per cent tax to aid in the

1. RAILROADS: tax in aid of: alienation of road: tax forfeited.

construction of the New Sharon, Coal Valley & Eastern Railroad. This action is brought to restrain the trustees of the township from certifying to the county treasurer that the condition of the vote has been complied with, and to restrain the county treasurer from collecting the tax, and from paying any moneys received by him on account of the tax. The petition further prays that the levy of the tax may be declared void and be set aside. Various objections were urged to the validity of the tax, based upon the grounds of irregularity and non-compliance with the law in the proceedings resulting in the levy, non-performance of the condition upon which the tax was voted, and other matters, which need not be stated or further referred to in this opinion, as we hold the tax invalid and not collectible upon another ground, which we will proceed to present.

II. By an amendment of the articles of incorporation of the New Sharon, Coal Valley & Eastern Railway Company,

THE SAME.

the name was changed to the Chicago, Burlington & Pacific Railroad Company. In 1882, after this change, the corporation in its new name, before the road had been completed, sold and conveyed its unfinished railroad to the Central Iowa Railway Company. The statute (chapter 123, Acts Sixteenth General Assembly) under which the tax in question was voted, provides that the tax-payer is entitled to receive stock in the corporation constructing the railroad in the amount of taxes paid by him. The statute also provides that the directors of the corporation shall be liable to a stockholder in double the amount of his stock, in case the railroad is incumbered, by mortgage or otherwise, beyond a limit prescribed. The statute, in providing for the enforced contribution by taxation to aid the construction of railroads, contemplates that the tax-payer may become a stockholder, upon the ground, doubtless, that he ought not

to be compelled to make contribution to a private enterprise, producing public benefits, wholly without compensation; and that, as the railroad is a thing of public nature, producing public benefits in which the tax-payer shares, he ought to be in the position, as a stockholder, to have a voice and influence in preserving its existence and controlling its use, so as to secure the public benefits for which it was built. The object of the statute was not primarily that the tax-payer should receive money or any other thing upon payment of his tax, but that he should receive the stock in the corporation building the road, to the end that he should have an interest in the road built. His stock, if separated from the railroad, would be to him as any other property. It cannot be that the statute intended that he should be taxed to aid in the building of the railroad, and that, before his tax is collectible, the road could be alienated, and in its place the corporation could acquire bonds or other property, to be held for the benefit of the stockholders. The statute does not contemplate that the tax-payer shall hold an interest as a stockholder in any property other than the railroad. This is evident from the fact that the object of the statute is for certain public purposes,—to provide a way to aid in the construction of railroads. It cannot, therefore, be that the statute will permit taxes to be collected when it becomes certain that the tax-payer can have no interest in the railroad, the very thing for which he was taxed. It is plain, from the provision of the statute making the directors liable in double the par value of the stock in case the road is incumbered beyond the prescribed limit, that it is the purpose of the statute to preserve the existence of the road in the corporation building it, and thus preserve the tax-payers interest therein. *Muscatine Western R'y Co. v. Horton,* 38 Iowa, 33, is not in conflict with the conclusions we have announced, for the reason that the statute authorizing the tax involved in that case (chapter 102, Acts Thirteenth General Assembly) did not provide that the tax-payers should receive stock for the taxes he paid. The

same observation may be made touching *Parsons v. Childs*, 36 Iowa, 108. We unite in the conclusion that the alienation of the road before the payment of the taxes is a just and lawful ground for setting them aside, and relieving the taxpayers of their burden. Other questions touching the validity of the tax need not, therefore, be considered.

III. Counsel for defendants insist that the judge of the circuit court who decided the case and ordered the decree had no jurisdiction in the cause, and for this reason the decree should be reversed. The position is based upon these facts: The case was prepared for trial upon depositions, and thereupon was, upon agreement of the parties, submitted for decision and decree in vacation. Before the decision a second circuit judge was added to the district, and the county in which the cause was pending was assigned to his circuit. Thereupon, the other judge, who had not decided the case, sent the cause to him, and he decided it. We discover nothing irregular in this. The judge deciding the case was the judge of the court within which the cause was pending at the time of the trial and decision. The trial of the cause was not its submission, but was the examination and consideration of the written evidence after it was submitted. We therefore think that the judge of the court at the time of the trial properly decided the cause. See *Hull v. Chicago, B. & P. R'y Co.*, 65 Iowa, 713.

2. JURISDICTION: not lost by change of judges between submission and decision of cause.

IV. Certain objections are urged by defendant, based upon the overruling of motions to suppress depositions. It is not necessary to consider them, for the reason that the evidence objected to is not considered by us. The facts upon which our decision is based are not the subject of dispute.

V. A motion by plaintiff to dismiss the appeal, for obvious reasons, need not be determined. The decree of the circuit court is

AFFIRMED.