Spencer Smith v. The Omaha & Council Bluffs Railway & Bridge Company of Iowa, and The Omaha & Council Bluffs Railway & Bridge Company of Nebraska, Appellants.

| 97 | 545 |
| 111 | 628 |

**Construction of Statutes:** Taxation. Laws Twenty-first General Assembly, chapter 13, section 1, provide for aid by cities to any corporation formed under the laws of Iowa for the construction of bridges. Section 3 provides for the payment of such aid to the treasurer of the company to whom it is voted. Section 2 provides that the terms and conditions expressed in the notice of the election shall be binding on ·such corporation, its "successors and assigns." *Held,* that such aid cannot be given to a foreign corporation.

Same: *Contracts.* The Omaha & Council Bluffs Railway & Bridge Company was organized in Iowa, to maintain a bridge over the Missouri river, between the two cities. The act of congress authorizing the bridge, designated the company as the Omaha & Council Bluffs Railway & Bridge Company, "organized under the laws of Iowa and Nebraska," whereupon a Nebraska company was formed under the same name, to which the Iowa company conveyed all its franchises, together with the right to the aid voted it by the city of Council Bluffs, for the construction of the bridge. The Nebraska company did not bind itself to build, for the Iowa company, the bridge which it subsequently constructed. *Held,* that the bridge was not constructed by the Iowa company, and neither it nor the Nebraska company was entitled to receive the aid voted the Iowa company, for the construction of the bridge. Laws Twenty-first General Assembly, chapter 13.

Wrongful taxation: *Practice.* Taxpayers may sue to recover from a bridge company, taxes paid by them, pursuant to a vote, to the company, to aid in the construction of a bridge (Laws Twenty-first General Assembly, chapter 13), and received by the company, where the company has failed to comply with the conditions entitling it to such aid.

*Same.* Laws Twenty-first General Assembly, chapter 13, section 4, providing that, should the taxes voted a bridge company, to aid in the construction of a bridge, remain in the treasury over a year, the right of the company thereto, shall be forfeited, and the taxes shall be refunded to the taxpayers, does not affect the right of a taxpayer to recover such taxes, when paid to the company

without its having complied with the conditions entitling it to aid, and he may recover, though such money has not remained with the treasurer more than a year.

DEEMER, J., took no part.

*Appeal from Pottawattamie District Court.*—HON. H. E. DEEMER, Judge.

THURSDAY, APRIL 9, 1896.

THIS is an action at law, brought by the plaintiff on a claim of his own, and as assignee of the claims of a number of other taxpayers of the city of Council Bluffs, to recover certain taxes which he, and they, paid to aid in the construction of a bridge over the Missouri river between the cities of Council Bluffs, Iowa, and Omaha, Neb. The facts and issues will appear in the opinion. The case was tried to the court, and judgment rendered in favor of the plaintiff for thirteen thousand, four hundred and twenty-five dollars and sixty-two cents. The defendants appealed, and assigned as error the entering of said judgment, and certain rulings of the court in admitting and refusing to admit certain testimony.—*Affirmed.*

*Wright & Baldwin* for appellants.

*Harl & McCabe* for appellee.

GIVEN, J.—I. The defendant corporations being organized under the same name, we will for convenience and brevity, designate one as the Iowa corporation and the other as the Nebraska corporation. There is but little to dispute as to the facts of this case; and the following is a sufficient statement of the facts for an understanding of the questions to be considered. The Iowa corporation was organized under the laws of Iowa, in October, 1886. Its purpose, as expressed in its articles, is as follows: "To construct,

operate and maintain a bridge across the Missouri river, at and opposite the cities of Omaha, Nebraska, and Council Bluffs, Iowa, and also a steam, electric motor, horse, elevated, cable, or other line of railway, and a public way across said bridge, and within the counties of Douglas, Nebraska, and Pottawattamie, Iowa, with the termini thereof in the said cities of Omaha and Council Bluffs." On October 29, 1886, the city of Council Bluffs passed an ordinance authorizing said Iowa corporation, "its successors and assigns, to construct, equip, maintain, and operate for the term of twenty-five years," a street railway in the streets of said city, as specifically set forth in said ordinance. Said ordinance was duly accepted by said Iowa corporation on the thirtieth day of October, 1886. On November 2, 1886, a special election was duly held in the city of Council Bluffs, to determine whether a tax of twelve mills per centum on the assessed valuation of the property of said city should be levied for the purpose of aiding said Iowa corporation "in the construction of a highway bridge over the Missouri river at a point commencing at the foot of Broadway street, or within three hundred feet thereof on either side of the city of Council Bluffs, Iowa, at and opposite the same in Iowa, and terminating opposite in the city of Omaha, Nebraska." A majority of the votes polled being for this taxation, the tax was thereafter duly assessed, levied and collected. The Missouri river being navigable, and subject to the jurisdiction of the United States, congress passed an act March 3, 1887, authorizing "the Omaha & Council Bluffs Railway & Bridge Co., an incorporation organized under the laws of the states of Nebraska and Iowa, to construct and maintain a bridge across the Missouri river." This act also authorized said bridge to be used as a combined railway and wagon bridge. It

will be observed that the authority conferred by congress was to "the Omaha & Council Bluffs Railway & Bridge Co., an incorporation organized under the laws of the states of Nebraska and Iowa," and that at that time only the Iowa corporation was in existence. It seems probable that, because of this phraseology in the act of congress, and the fact that the bridge was to be constructed over a river dividing two states, it was thought necessary to organize a corporation under the laws of Nebraska. On April 1, 1887, the Nebraska corporation was organized for the purpose, as stated in its articles, as follows: "The general nature of the business to be transacted by the corporation shall be to construct, operate and maintain a bridge across the Missouri river, at and opposite the cities of Omaha, Nebraska, and Council Bluffs, Iowa, and also a steam, electric motor, horse, elevated, cable, or other line of railway, and a public way across said bridge, and within the counties of Douglas, Nebraska, and Pottawattamie, Iowa, with the termini thereof in the said cities of Omaha and Council Bluffs." On May 14, 1887, said. corporation entered into a contract, in writing, which was duly executed and acknowledged. Said contract, among other things, provided as follows: "First. The said Omaha & Council Bluffs Railway and Bridge Company of Council Bluffs, Iowa, for the consideration hereinafter named, hereby sells, assigns transfers, and sets over to the said Omaha and Council Bluffs Railway & Bridge Company of Omaha, Nebraska, all that certain tax of twelve mills per centum on the assessed valuation of the property in the city of Council Bluffs, voted to the said Omaha & Council Bluffs Railway and Bridge Company of Council Bluffs, Iowa, by the electors of the said city of Council Bluffs, Iowa, on the second day of November, A. D. 1886, to aid in the construction of a highway bridge over the Missouri

river between the cities of Omaha, Nebraska, and Council Bluffs, Iowa, together with the right and the authority to receive the same as and when collected by and from the treasurer of Pottawattamie county, Iowa, the same as the said party of the first part could do, under the provisions of chapter 13 of the Laws of Iowa, passed in the year 1886, being the Session Laws of the Twenty-first General Assembly of the state of Iowa. And the said party of the first part agrees, if so requested, to receive said tax when and as collected by and from said treasurer, and pay the same over to the party of the second part when so demanded." By said contract the Iowa corporation leased to the Nebraska corporation for the term of ninety-nine years all its rights, interest and property under said ordinance and act of congress. In consideration of this tax and lease, the Nebraska corporation agreed "to give in full consideration therefor to the said party of the first part, for the benefit of its stockholders, one-half of all the shares of the full paid up capital stock of the said Omaha & Council Bluffs Railway & Bridge Co., of Omaha, Nebraska, the receipt whereof is hereby acknowledged." A bridge, as contemplated, was constructed and completed in December, 1888, and has ever since been maintained as a motor line and wagon bridge. Of the tax so voted and collected, there is no question but the plaintiff and his assigns paid a sum equal to the amount of the judgment rendered, and that this amount was paid by the treasurer of Pottawatamie county to "J. H. Millard, treasurer of the Omaha & Council Bluffs Railway & Bridge Co." There is some dispute as to whether this payment was to the Iowa, or to the Nebraska, corporation. The Iowa corporation never issued any stock, and after the execution of said contract did not transact any business in the way of constructing, maintaining, or operating

said bridge, or street railways. The stock given by the Nebraska corporation was issued directly to the subscribers to the stock of the Iowa corporation. The bridge was constructed under contracts made by the Nebraska corporation with other persons, and it, and the street railways, have ever since been maintained and operated by that corporation.

II. The tax in question was voted, assessed and collected, under the provisions of chapter 13, Laws Twenty-first General Assembly, section 1, which is as follows: "Taxes, not to exceed five per centum on the assessed value of any incorporated city, having five thousand inhabitants, may be voted to construct, or to aid any company, which is, or may be incorporated, under the laws of the state of Iowa, in the construction of a highway bridge, commencing or terminating in such city, across any navigable boundary river of the state of Iowa." The expediency of such legislation has often been doubted, and it has been uniformly held, that such statutes should be strictly construed. *Dean v. Charlton*, 27 Wis. 522. It seems to us clear, that this statute limits the giving of such aid to corporations organized under the laws of this state. Appellant contends that, as such bridges cannot be built without authority from the United States and the adjoining states, it must have been contemplated, that corporations from both states must join in the enterprise, and, therefore, it was not intended to restrict the aid to the domestic corporation. The Iowa corporation had authority from its state and the United States, under which it could build to low water mark on the Nebraska shore, and it does not appear that it could not have obtained the right under the laws of Nebraska, to have built upon the Nebraska shore. Appellant also refers to that part of section 2 of said chapter thirteen, which provides that the terms and

conditions expressed in the notice for the election "shall become obligatory and binding upon such company, and its successors and assigns." It does not follow that, because the domestic corporation may have "successors and assigns," such aid may be given to foreign corporations. Said section 1, expressly limits it to Iowa corporations, and section 3, emphasizes the limitation by providing that the money is to be paid, not to a foreign corporation, nor to any corporation that may perform the conditions upon which it was voted, but "to the treasurer of such company to whom such aid is voted." It is certainly clear that such aid cannot be given to a foreign corporation, and that such a corporation cannot become entitled to aid voted to a domestic corporation by merely performing the conditions on which it was voted.

III.   There is no question but that the Iowa corporation was entitled to this aid, upon performing the conditions upon which it is payable. This it was not required to do with its own hands, but might do by contracts with other persons, or corporations, domestic, or foreign, and assign its right to the aid payment. Appellant's contention is that this bridge was constructed by the Nebraska corporation, under said written contract, for the Iowa corporation. Appellee contends that said contract is contrary to public policy, *ultra vires*, and void, and therefore neither party to it acquired any rights under it. By said contract the Iowa corporation sold, assigned, transferred, and set over to the Nebraska corporation "all of said tax, together with the right and authority to receive the same when collected by and from the treasurer of Pottawatamie county, Iowa," and leased for ninety-nine years all its rights, interests, and property under said ordinance and act of congress. In return for this the Nebraska corporation

made but a single promise, namely, "to give in full consideration therefor to the said party of the first part, for the benefit of its stockholders, one-half of all the shares of the full paid up capital stock of the said Omaha & Council Bluffs Railway & Bridge Company of Omaha, Nebraska." While to enjoy these franchises it was necessary that the Nebraska corporation should build the bridge, it surely did not obligate itself to the Iowa company to do so. For the tax and lease it gave one-half of its paid up capital stock, and it remained with it to build the bridge or not, so far as the Iowa corporation is concerned; and, had it failed to do so, the Iowa corporation would have no grounds of complaint. Appellant cites *State v. Omaha & C. B. Railway & Bridge Co.*, 91 Iowa, 517 (60 N. W. Rep. 122),—an action to forfeit the charter and franchises of the Iowa corporation on the ground that it had abandoned its rights to corporate existence. We said in that case that the Iowa corporation is the owner of said bridge and railway, subject only to the rights of the Nebraska corporation and its mortgagees therein. The question involved in that case was the right of the Iowa corporation to continue to exist as a corporation, and the rights that would revert to it on the termination of said lease, were given as a reason why its corporate existence should not be ended. The ownership of the bridge was not involved, and the remark relied upon by appellant was applicable to the property and franchise held by the Iowa corporation, rather than to the bridge itself. It was not intended then, nor do we intend now, to determine who will own the bridge at the termination of said lease, as that question is not before us. Our present inquiry is, whether the bridge was built under contract for the Iowa corporation, and our conclusion is that it was not. While we

still think the Iowa corporation has the right to exist as such, to the end that it may exercise the franchises given it, when its lease thereof is terminated, it is plain that since the execution of said written contract it has transacted no other business, and had none other to transact, than the preservation of its corporate existence. It did not construct the bridge, nor have it constructed. It was constructed by the Nebraska corporation, on its own motion, and for itself, and therefore it cannot be said that the Iowa corporation has earned the aid. If it has not earned it, then surely the Nebraska corporation was not entitled to it. As said written contract does not provide for the construction of the bridge, we need not determine whether it is void or not. The only conclusion that can be reached from this record is, that the Nebraska corporation, having secured a lease of the Iowa corporation's franchises, went on, and built the bridge at its own expense, and for itself, and was not entitled to the aid voted to the Iowa corporation. It is said in argument, that the tax was paid to the Iowa corporation. If so, it was paid to it by the Nebraska corporation, and, as neither was entitled to it, the matter of the payment is immaterial. It is also argued that, as the conditions upon which the aid was voted were fully carried out, there was a compliance with the spirit and intent of the statute. It is undisputed, that statutes like this, are to be strictly construed. Thus construed, it is plain that aid is limited to Iowa corporations, and to hold, under the facts of this case, that the Nebraska corporation is entitled to this aid, is to ignore that part of the statute which limits its provisions to Iowa corporations. Appellants insist that it is immaterial by which corporation the bridge was built, and cite *Reeves v. Traction Co.*, 152 Pa. St. 153 (25 Atl. Rep. 516). In that case, the city council had, by ordinance,

consented to the operation of a street railway, by overhead electric wires, and the company owning the railway was specifically named in the ordinance, but the company, to which it was leased for a term of years was not mentioned. It was held that the consent was that the thing should be done by the two corporations acting together as one, and that such consent was meant to be operative as to both corporations. The court says: "The scope of legislative acts, whether statutes or ordinances, is to be determined by the intention of the enacting body." As already stated, we think it was clearly the intention of the enacting body that only domestic corporations could become entitled to the aid provided for in said chapter 13. Appellants also cite *Railroad Co. v. Horton,* 38 Iowa, 33; *Parsons v. Childs,* 36 Iowa, 108; *Railway Co. v. Shea,* 67 Iowa, 729 (25 N. W. Rep. 901). These cases were decided under statutes authorizing the vote of the tax to aid in the construction of railways, without any limitation or reference to the person or corporation by whom to be constructed, and therefore are not applicable to this case.

IV. Section 4, of said chapter 13, provides that: "Should the taxes levied under the act remain in the county treasury more than one year after the same shall have been collected, the right to them shall be considered forfeited, and the same shall be refunded to the taxpayers." Appellant contends that this provision is the only one under which the taxpayers can recover the taxes paid by them, and that, as this tax did not remain in the treasury more than one year, plaintiff is not entitled to recover. This provision does not relate to a recovery from one who may have wrongfully received the tax. It simply fixes the time and conditions upon which the treasurer shall refund the tax, and is not to the exclusion of any right of action that may arise

in favor of the taxpayer against other persons. *Barnes v. Marshall County*, 56 Iowa, 20 (8 N. W. Rep. 677). "Where money is paid under the provisions of the law for voting taxes in aid of the construction of railroads, it has been held that such money in the hands of the treasurer, is a trust fund, and that the taxpayer and the railroad company are both beneficiaries." *Eyerly v. Supervisors*, 77 Iowa, 470 (42 N. W. Rep. 374). In the same case, in 81 Iowa, on page 193 (46 N. W. Rep. 986), it is said: "It is shown that Galusha, while treasurer, wrongfully paid out money to which plaintiff is entitled, and that such payment was made before this action was commenced. It thus appears that plaintiff can obtain no relief by mandamus which would not be afforded in the ordinary course of the law, and the relief in this action must, therefore, be denied." Until the money in question was earned, as contemplated in said chapter 13, it remained the property of the taxpayers, held in trust to await performance of the conditions. The conditions not being performed as contemplated in said chapter, the taxpayers were not divested of their right in the money, and have a right to action to recover on account thereof, from any person who wrongfully withholds it. We think the judgment of the district court is correct, and it is therefore AFFIRMED.

DEEMER, J., took no part.